UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RONALD NUNNERY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:07CV1585 JCH |
| | ) |
| MICHAEL BOWERSOX, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Missouri State prisoner Ronald Nunnery's pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is fully briefed and ready for disposition.

On January 6, 2003, Petitioner was convicted in a bench trial in the Circuit Court of Dent County, Missouri, of one count of first degree murder, and one count of armed criminal action. Petitioner was sentenced to consecutive terms of life imprisonment without the possibility of probation or parole, and fifty years imprisonment, respectively. The Missouri Court of Appeals affirmed Petitioner's convictions. State v. Nunnery, 129 S.W.3d 13 (Mo. App. 2004).

Petitioner thereafter filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which was denied after an evidentiary hearing. (Resp. Exh. F). The Missouri Court of Appeals affirmed the denial of Petitioner's post-conviction motion in an unpublished opinion. (Resp. Exh. J).

Petitioner is currently incarcerated at the South Central Correctional Center in Licking, Missouri. In the instant petition for writ of habeas corpus, Petitioner does not raise specific claims for relief. Instead, he merely references his direct and post-conviction appellate briefs, copies of

which are attached to his § 2254 petition. The Court thus assumes Petitioner's claims to be those raised in his two appeals, and will address the claims accordingly.[1]

## DISCUSSION

**A.     Ground 1**

In Ground 1 of his petition, raised as Point One in his direct appeal, Petitioner alleges the trial court erred in denying his motion to suppress statements, as the statements were given in violation of Petitioner's Miranda rights. (Resp. Exh. C, PP. 14, 17-25, citing Miranda v. Arizona, 384 U.S. 436 (1966)). Specifically, Petitioner maintains the statements were obtained illegally, because the police represented that Petitioner was in custody to be interrogated about sixteen forgery counts, and never indicated Petitioner was to be interrogated as a murder suspect. (Id.). The Missouri Court of Appeals denied the claim as follows:

> Appellant's[2] first point relied on is set forth below:
>
> The trial court clearly erred when it denied the motion to suppress statements and overruled counsel's objections to admitting statements [Appellant] made to all law enforcement because [Appellant] was denied his rights to due process and to not incriminate himself and his *Miranda* rights, U.S. Const. Amends. V and XIV and Mo. Const. Art. I, Sections 10 and 19, in that those statements were obtained through the police representing to [Appellant] that he was in custody to be interrogated about only sixteen forgery counts and he was not told as part of the *Miranda* warnings given that he was also going to be interrogated as a murder suspect in Marcia Nunnery's disappearance even though the police considered him a murder suspect. Therefore, [Appellant's] waiver of rights was not freely, knowingly, intelligently, and voluntarily made, but was the product of coercion and obtained in violation of *Miranda*.
>
> Whether a defendant's constitutional rights were violated is a question of law reviewed *de novo*. *State v. Hamilton,* 8 S.W.3d 132, 135 (Mo.App.1999).

---

[1] To the extent Petitioner intended to pursue other claims raised in his pro se 29.15 motion, such claims are procedurally defaulted, as he did not raise them on appeal from the denial of that motion.

[2] Petitioner is referred to as "Appellant" by the Missouri Court of Appeals.

*Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), mandates that those in custody or subject to interrogation be properly advised of their constitutional guarantees of due process and protection against self-incrimination, including one's right to remain silent and one's right to the presence of an attorney. However, a suspect may waive his or her Fifth Amendment privilege, "provided the waiver is made voluntarily, knowingly and intelligently." *Id.*

To meet the standards imposed by *Miranda,* the State must "demonstrate that the defendant knowingly and intelligently waived his [or her] privilege against self-incrimination and his [or her] right to retained or appointed counsel." *Id.* at 384 U.S. at 475, 86 S.Ct. at 1628. *Miranda* also places on the State the burden to demonstrate by a preponderance of the evidence that the statement from the accused was made voluntarily. *State v. Williams,* 956 S.W.2d 942, 948 (Mo.App.1997).

A waiver is defined as "an intentional relinquishment or abandonment of a known right or privilege." *State v. Bucklew,* 973 S.W.2d 83, 90 (Mo.banc 1998), *cert. denied,* 525 U.S. 1082, 119 S.Ct. 826, 142 L.Ed.2d 683 (1999). The question of waiver is one of fact. *State v. Scott,* 841 S.W.2d 787, 789 (Mo.App.1992). Here, the State bears the burden of proving, by a preponderance of the evidence, that the accused properly waived his rights. *State v. Banks,* 922 S.W.2d 32, 39 (Mo.App.1996).

"[W]hether a waiver is knowing and intelligent depends on the facts and circumstances surrounding that case[,] and review is based on the totality of the circumstances, taking into account the background, experience and conduct of the accused." *Bucklew,* 973 S.W.2d at 90. "[U]nless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against" a suspect. *Miranda,* at 384 U.S. at 479, 86 S.Ct. at 1630.

"The requirement that a waiver of rights be knowing and intelligent does not mean that a defendant must know and understand all of the possible consequences of the waiver." *State v. Powell,* 798 S.W.2d 709, 713 (Mo.banc 1990). "Rather, it requires that the defendant understood the warnings themselves;" that defendant at all times knew that he or she could stand silent, could request that an attorney be present during interrogation, and that the State could and would use any statement to obtain a conviction. *Id.*

In considering a challenge to the voluntariness of a confession, this court should "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Bucklew*, 973 S.W.2d at 90. "Voluntariness depends on the absence of coercive police activity." *Williams,* 956 S.W.2d at 948. "The test for voluntariness is whether under the totality of the circumstances the defendant was deprived of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that the defendant's will was overborne at the time of the confession." *Id.*

Here, Appellant asserts that his waiver "was the product of coercion[,]" in that law enforcement initially represented to him that he was to be interrogated regarding sixteen counts of forgery, but was, in addition, interrogated as a murder suspect in his wife's disappearance.

A trial court's ruling on a motion to suppress will not be reversed if supported by substantial evidence. *State v. Gilbert,* 103 S.W.3d 743, 750 (Mo.banc 2003). On review, the facts and any reasonable inferences arising therefrom are viewed in a light most favorable to the trial court's ruling. *State v. Davis,* 32 S.W.3d 603, 610 (Mo.App.2000). Conflicts in the evidence and the credibility of witnesses are matters for the trial court to resolve. *Banks,* 922 S.W.2d at 39. The State must show, by a preponderance of the evidence, that a defendant's motion to suppress should be overruled. *State v. Meinhardt,* 900 S.W.2d 242, 244 (Mo.App.1995).

Appellant did not testify, nor did he call any witnesses. The State called Eunnona Nunnery and law enforcement personnel who were involved in the arrest and subsequent search of Appellant's property. Admitted over Appellant's objections, were two "Notification and Waiver of Rights" forms and a "Consent to Search" form, all signed by Appellant, and a videotape of Appellant's statement.

Deputy Sheriff Bobby Burch, who assisted the Division of Drugs and Crime in the arrest of Appellant on forgery charges, was the booking officer in Appellant's case. Deputy Burch stated he had been assigned to investigate the forgery case against Appellant, and that he had not been involved in the missing-person investigation. He informed Appellant that he was under arrest on sixteen counts of forgery. Burch testified that around 7:30 p.m., he read the Miranda warnings to Appellant and advised Appellant that an investigator would be in to talk with him. Appellant signed a "Notification and Waiver of Rights" form at 7:32 p.m., which Burch witnessed. Burch stated that Appellant did not ask for an attorney to be present and there was no indication from Appellant that he wanted the interrogation to cease.

Sergeant Terry Mills of the Missouri State Highway Patrol met with Appellant around 8:15 p.m. Deputy Burch had already advised Sergeant Mills that Appellant had been "mirandized." When Sergeant Mills asked Appellant if he knew with what he had been charged, Appellant responded, "forgery and bad checks." It was during Sergeant Mills' interrogation that Appellant admitted he had killed his wife. Sergeant Mills requested that Appellant consent to the videotaping of his statement, to which Appellant agreed. Sergeant Mills re-advised Appellant of his rights under *Miranda,* and Appellant signed another waiver at 10:35 p.m. Mills testified that Appellant never indicated that he wanted an attorney or that he wanted to end the interrogation.

Also present during Sergeant Mills' interrogation was Special Agent Diane Stowe with the Office of the Inspector General under the Social Security Administration. She witnessed Appellant's execution of the second waiver form and a "Consent to Search" form. She testified that there were no promises, threats or

coercion, and that when he was advised of his rights, Appellant indicated he understood and did not appear to be under the influence of any mind-altering substances at the time.

Corporal Charles Colbert, with the Missouri State Highway Patrol, had been called in to transport Appellant for the search of his home and property. Corporal Colbert handcuffed Appellant and was informed that Appellant "had been mirandized." He testified that he never asked Appellant a question on the drive to Appellant's farm.

At the farm, Appellant directed investigators to the location where he believed Marcia was buried. A search of the home revealed 30.30 shells, but no weapon. Corporal Colbert testified he also recovered pawn tickets for a weapon and three rings. Upon a subsequent inquiry at the pawn shop, a 30.30 Winchester rifle that Appellant had pawned in February, 2001, was recovered, along with three rings Appellant pawned in September, 2000.

Upon leaving the farm to return Appellant to Wayne County, Appellant asked if Corporal Colbert "wanted to know what happened." Colbert replied, "[I]f you want to that's okay with me." In response, Appellant pointed out the location on a sidewalk where he had shot Marcia and told Colbert that he had tied a rope around her and dragged her to the freezer using an ATV. He showed Colbert the freezer in which he had initially placed Marcia's body and identified a damaged 2 x 6 in an outbuilding that had cracked under the weight when Appellant winched Marcia's body up to place it in the freezer.

Sergeant Don Windham testified that he had been present at the farm to assist in the search for and excavation of Marcia Nunnery's body. Absent any objection from defense counsel, Sergeant Windham stated that Appellant had been "showing us around the area," and pointed out where he had hoisted the body up into the freezer and where Appellant had buried Marcia's body.

"The state's showing that a 'defendant was informed of his rights, that he was capable of understanding those rights, and that no physical force, threats, promises or coercive tactics were used to obtain the confession,' is *prima facie* evidence that the confession given while the defendant was in custody was voluntary.'" *State v. Johnson,* 988 S.W.2d 115, 120 (Mo.App.1999) (quoting *State v. Wilkinson,* 861 S.W.2d 746, 750 (Mo.App.1993)). "After the state has made a prima facie case, the defendant must produce evidence showing any 'special circumstance' that may have rendered the confession involuntary." *State v. Day,* 970 S.W.2d 406, 409 (Mo.App.1998). Appellant presented no such evidence. We find that the State met its burden.

Further detrimental to Appellant's position, a waiver of rights under *Miranda* is not offense-specific.

> The *Miranda* right to counsel during custodial interrogation was supplemented by the guarantee established in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Once a suspect asserts the right, not only must the current interrogation cease, but he may not be approached for further interrogation regarding *any* offense until counsel has been made available to him, which means that counsel must be present.
>
> *Meinhardt,* 900 S.W.2d at 246 (citing *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)). Therefore, waiver under *Edwards* is not offense-specific. *See McNeil,* 501 U.S. at 177, 111 S.Ct. at 2208; *Arizona v. Roberson,* 486 U.S. 675, 675-76, 108 S.Ct. 2093, 2095, 100 L.Ed.2d 704 (1988); *State v. Farris,* 125 S.W.3d 365, 368 (Mo.App. W.D. 2004); *Landrum v. Arkansas,* 326 Ark. 994, 936 S.W.2d 505, 508 (1996). *See also State v. Blackman,* 875 S.W.2d 122, 137 (Mo.App.1994) "*Edwards* applies not only to continued questioning in the context of the same investigation but also to questioning in an independent investigation or on other charges.") Point I is denied.

State v. Nunnery, 129 S.W.3d at 17-20.

With respect to federal court review of state court conclusions, 28 U.S.C. §2254 states in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254 (d).

Upon consideration, this Court finds the decision of the Missouri court is entitled to deference. Specifically, this Court finds the Missouri Court of Appeals correctly applied the holdings of Miranda and its progeny, and further reached factual determinations that were not unreasonable in light of the evidence presented. Ground 1 of Petitioner's §2254 petition must therefore be denied.

**B.**     **Ground 2**

In Ground 2 of his petition, raised as Point Two in his direct appeal, Petitioner alleges the trial court erred in indicating it was denying his motion to suppress statements with respect to those statements made to Officers Mills and Stowe only, and not with respect to those statements made to Officer Colbert. (Resp. Exh. C, PP. 16, 26-28, citing Miranda v. Arizona, 384 U.S. 436 (1966)). The Missouri Court of Appeals denied the claim as follows:

> Appellant's second point states:
>
> The trial court clearly erred in only indicating it was denying the motion to suppress the interrogation statements made to Officers Mills and Stowe because that ruling denied [Appellant] his rights to due process, to not incriminate himself, and his *Miranda* rights, U.S. Const. Amends. V and XIV and Mo. Const. Art. I Sections 10 and 19, in that the court failed to also make a ruling on the separate interrogation statements [Appellant] made to Officer Colbert.
>
> Here, Appellant contends that *State v. Bittick*, 806 S.W.2d 652 (Mo.banc 1991), requires that the trial court in this case "rule on whether the separate statements made to Colbert should have been suppressed." *Bittick* does not control here, however, as it involved the failure of a trial court to address the issue of knowing and intelligent waiver, thereby necessitating remand for that determination. *See Scott,* 841 S.W.2d at 789.
>
> The trial court's findings of fact are reviewed under a clearly erroneous standard. *State v. Hamilton*, 8 S.W.3d 132, 135 (Mo.App.1999). Findings concerning waiver will not be overturned unless clearly erroneous. *Scott,* 841 S.W.2d at 789. When reviewing a trial court's ruling on a motion to suppress, the appellate court considers the record made and the evidence introduced at trial. *State v. West,* 58 S.W.3d 563, 567 (Mo.App.2001).
>
> Appellant's oral motion to suppress consists of the following excerpts taken from the transcript:
>
> We will, however, not be waiving any objection to the admission into evidence of those video-taped statements or any other statements made by our client. And actually, we're seeking to proceed today in this trial before the Court pursuant to an oral motion to suppress the statements of defendant.
> ....
>
> What we're asking in this motion, Judge, is we're asking the Court to agree that we are preserving the record when we make objections, without having to go through all the federalization, the federal protections and the federal guaranty. That's

the stipulation, that we're asking that our federalization be included within our objections.

....

And then finally, Judge, I'd ask that we proceed pursuant to an oral motion to suppress the statements of our client.

The trial court then indicated that Appellant's oral motion would be taken with the case.

Appellant cannot now complain regarding the trial court's ruling on the oral motion to suppress. "[I]t is the responsibility of the appellant to make known to the trial court his objections to the admissibility of evidence and whether it has been obtained in violation of guarantees afforded him by the Constitution of the United States or of the State of Missouri, or the decisional law of the Federal or State courts. In doing so he must state specifically the grounds for his objection." *State v. Redd,* 550 S.W.2d 604, 608 (Mo.App.1977).

We find the trial court's ruling on Appellant's motion to suppress in two locations in the record before this Court. Appellant refers us only to the trial court's statement contained in the transcript, set out below:

[T]he Court finds that the statements that the defendant made in the presence of Sgt. Terry Mills and Agent Diane Stowe were made freely, voluntarily and intelligently after a full and knowing waiver of his rights after being advised of same in accordance with Miranda. Court further finds that the consent to search which was executed before said witnesses was made freely and voluntarily and that the objects and items which were retrieved from the residence and the ensuing search of the residence was made freely and voluntarily by the defendant as to his knowing consent therein. Accordingly, the Motion to Suppress Statements and the evidence seized in accordance with same and statements made in accordance with same is overruled and denied.

However, a docket entry January 6, 2003, references the trial court's ruling on Appellant's motion to suppress. The docket entry reads:

The Court then took up the Dft's oral motions to suppress statements and evidence. The Court finds as a matter of law that the statements to Sgt. Mills of the Highway Patrol and Agent Stowe were made freely and voluntarily and intelligently by the Dft and not in contravention to his rights of the Missouri or U.S. Constitution or the laws of this state. The Court thereby finding that Dft was fully advised of his rights in advance of the statements he made and the time period between said waiver of his rights and the ensuing statements was not such that Dft needed to be readvised of his rights and in fact the Dft was on at least three occasions advised of his rights in accordance with Miranda. Under all the attendant circumstances the Court finds said statements made by the Dft and his consent to search to be made freely and

voluntarily given and not under any threat or coercion or promise of lenancy [sic]. Accordingly, the Motion to Suppress Statement and Evidence is overruled and denied.

When ruling on a motion to suppress, there are no particular formal findings required. *State v. Schnick,* 819 S.W.2d 330, 336 (Mo.banc 1991). "The trial court must make a determination of admissibility, often referred to as voluntariness, including, or based upon an expressed or clearly implied finding in respect to the issues." *State v. Harris*, 670 S.W.2d 526, 529 (Mo.App.1984).

That the trial court found Appellant's statements to have been made voluntarily is clear from the record before us. Point II is denied.

State v. Nunnery, 129 S.W.3d at 20-22.

As stated above, with respect to federal court review of state court conclusions, 28 U.S.C. §2254 states in pertinent part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254 (d).

Upon consideration, this Court again finds the decision of the Missouri court is entitled to deference. This Court's review of the record provides support for the Missouri Court of Appeals' determination that the trial court effectively denied all aspects of Petitioner's motion to suppress statements. Ground 2 is denied.

**C.     Ground 3**

In Ground 3 of his petition, raised on appeal of the denial of his Rule 29.15 motion, Petitioner alleges he received ineffective assistance of counsel, in that his trial counsel failed to conduct an

adequate investigation, and failed to prepare for trial. (Resp. Exh. H, PP. 13-18). Petitioner alleges he was prejudiced by his counsel's failures, in that adequate investigation and preparation would have revealed other individuals with both motive and opportunity to murder the victim. (Id.). Petitioner raised this claim in his Rule 29.15 motion for post-conviction relief, and the motion court denied the claim as follows:

> In Movant's[3] Motion, Movant alleged in claim 8(c) that his trial counsel failed and refused to perform an in-depth investigation and to interview witnesses suggested by the Movant. Movant presented no credible evidence that he requested trial counsel to call any witnesses at trial. The record reflects that trial counsel completed extensive investigation in preparation for trial. Trial counsel's failure to call an unspecified witness at trial does not appear to the Court to be ineffective assistance of counsel. It is well settled that the decision not to call a witness, in this instance an unknown witness, is virtually unchallengeable on a claim of ineffective assistance of counsel. Matt v. State, 992 S.W.2d 269 (ED 99).

(Resp. Exh. F, P. 25). Petitioner advanced the claim on appeal of the denial of his 29.15 motion, and the Missouri Court of Appeals denied the claim as follows:

> Movant's sole point on appeal claims trial counsel was ineffective for not discovering others with a better motive than Movant to kill his wife; such evidence would have raised reasonable doubt about Movant's guilt; and the motion court erred in concluding otherwise....
>
> Movant's claim on appeal required, among other things, proof that "the witnesses would testify if called, and that the testimony would have provided a viable defense." *State v. Twenter*, 818 S.W.2d 628, 639-40 (Mo. banc 1991). Movant proved otherwise at the evidentiary hearing:
>
>> Q: Did you provide in your motion, did you identify what the attorney would have discovered that was not otherwise known to the attorney had he interviewed and deposed those supposed witnesses?
>>
>> A: I didn't know that was supposed to be there.
>>
>> Q: Okay but you didn't put it in there did you?
>>
>> A: I guess not.

---

[3] Petitioner is referred to as "Movant" by the post-conviction motion court.

- 10 -

> Q: Alright and actually all these witnesses, the majority of witnesses that you're talking about you're saying that they should be considered as suspects, is that right?
>
> A: Yes.
>
> Q: Do you think they would have testified on your behalf?
>
> A: They'd of framed me and anybody knows it that knows my family knows it.
>
> Q: They would have framed you?
>
> A: Yes.
>
> "Framing" Movant was not a viable defense. Movant's failure to show that "witnesses were available at the time of trial and...that their testimony would establish a viable defense defeats any claim of ineffective assistance of counsel based on a failure to investigate and present these witnesses." *Id.*
>
> Moreover, another's motive or opportunity for this killing was inadmissible unless he or she committed some act directly connected to the crime. ***State v. Rousan***, 961 S.W.2d 831, 848 (Mo. banc 1998); ***State v. Lloyd***, 205 S.W.3d 893, 902 (Mo.App. 2006). Movant, who confessed on videotape to the crime, testified vaguely about other persons' motives, but offered no evidence linking them to the crime, let alone evidence "'of the kind that directly connects the other person with the *corpus delicti* and tends clearly to point to someone other than the accused as the guilty person.'" ***Id.*** (quoting ***Rousan***, 961 S.W.2d at 848). Evidence that merely casts suspicion on others, or raises a conjectural inference that someone else committed the crime, is inadmissible. ***Id.***
>
> Our review of the entire record does not definitely and firmly persuade us that a mistake was made, thus the motion court's quoted findings and conclusions are not clearly erroneous. We affirm.

(Resp. Exh. J, PP. 2-4).

As stated above, with respect to federal court review of state court conclusions, 28 U.S.C.

§2254 states in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254 (d).

Upon consideration, this Court finds the decisions of the Missouri courts are entitled to deference. In order to prevail on his ineffective assistance of counsel claim, Petitioner must show that his attorney's performance was "deficient," and that the deficient performance was "prejudicial." Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, Petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if Petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 694. To do so, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Upon consideration, the Court finds Petitioner fails to establish the second prong of the Strickland test, i.e., demonstrating that his trial counsel's allegedly deficient performance was prejudicial. Specifically, the Court notes that during his testimony in support of his Rule 29.15 motion, Petitioner failed to provide examples of witnesses who would have been willing to testify on his behalf; rather, he provided only names of additional witnesses whose testimony would have supported the State's version of events. (Resp. Exh. G, PP. 8-14, 19-21). In light of this deficiency,

the Court cannot find that absent trial counsel's failure to investigate these supposed witnesses, the result of Petitioner's proceeding would have been different. Strickland, 466 U.S. at 694. Petitioner's request for habeas relief on this ground must therefore be denied.[4]

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. No. 1) is **DENIED**, and his claims are **DISMISSED** with prejudice. A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998).

Dated this 26th day of February, 2008.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[4] In light of the Court's ruling that Petitioner failed to establish prejudice, it need not consider whether trial counsel's performance was deficient.